# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| AIMEE BARRETO, | * |
| Plaintiff, | * |
| v. | *   Civil Action No. 8:17-cv-02716-PX |
| SGT, Inc., | * |
| Defendant. | * |

## MEMORANDUM OPINION

Pending before the Court is Plaintiff Aimee Barreto's motion for sanctions (ECF No. 51) and motion to compel (ECF Nos. 56 & 57), third-party National Aeronautics and Space Administration ("NASA")'s related motion to quash subpoena (ECF No. 68), Defendant SGT, LLC, formerly SGT, Inc. ("SGT")'s motion for summary judgment (ECF No. 69), and Barreto's motion to seal exhibits. ECF No. 81. Each motion is fully briefed, except the motion to seal, and no hearing is necessary. *See* Loc. R. 105.6. For the following reasons, the Court denies Barreto's motions for sanctions and to compel, grants NASA's motion to quash, grants SGT's motion for summary judgment and defers ruling on Barreto's motion to seal.

## I.  Background

SGT, an engineering and technology company that staffs federal government contracts, hired Barreto as a human resources specialist in 2007. ECF No. 69-4 ¶ 2–3. Barreto, a woman of Puerto Rican descent who identifies as Hispanic or Latina, earned her Master of Science in government contracts and a Master of Business Administration. ECF No. 83 at 5; ECF No. 82-20 at 1. In 2014, Barreto was promoted to a Group Lead. ECF No. 69-4 ¶ 4. Barreto also received a 10% salary increase in consideration of her promotion, although her supervisor, Nora Bozzolo, advocated for a 17% increase. *Id.*; ECF No. 69-6 at 2; ECF No. 82-10 at 1.

Bozzolo, who is from Argentina, had known Barreto since 2005. ECF No. 69-6 at 3. The two women spent time together socially, and Barreto described Bozzolo as her friend. *Id.* at 5; ECF No. 82-7 at 3. Bozzolo knew that Barreto was of Puerto Rican descent. At some point during the eleven years that Barreto and Bozzolo knew each other, Bozzolo, according to Barreto, had "made general comments about Puerto Ricans," such as, "'That's just Puerto Ricans,'" and, "'That's the way Puerto Ricans are.'" ECF No. 83 at 31, 34. When pressed as to when, how often, or under what circumstances Bozzolo made such comments, Barreto could not recall any further detail.

Barreto worked under the Mechanical Systems Engineering Services IIA Bridge ("MSES") contract, which developed space flight hardware and other support for NASA missions. ECF No. 69-5 ¶ 5. Barreto's group, Materials Engineering, focused on one task, which was comprised of approximately 30–50 subtasks. ECF No. 82-12 at 1; ECF No. 83 at 13. Barreto supervised four SGT employees, as well as twelve subcontractor employees. ECF No. 69-5 ¶ 12. The MSES contract was scheduled to end, with the work transiting to a new contract in December 2015. ECF No. 82-13 at 3. NASA awarded the new contract, known as Mechanical Integrated Services and Technologies ("MIST"), to a different subcontractor, ATA Aerospace ("Aerospace"). ECF No. 69-5 at 25. However, under MIST, SGT was still responsible for approximately 33% of the work. *Id.* at 33.

By September 23, 2015, Barreto understood that she, like many others who had been on the MSES contract, would not continue under MIST. ECF No. 69-5 ¶ 22; ECF No. 69-6 at 12–13. Recognizing the possibility of future unemployment with SGT, Barreto sought guidance from Bozzolo, who provided Barreto with temporary work to extend her time at SGT. ECF No. 69-5 at 40. But in December 2015, Barreto learned that, while SGT still intended to terminate

Barreto's employment, SGT decided to retain certain employees from the MSES contract. Barreto, in turn, emailed Bozzolo to complain of "clear discrimination." *Id.* at 43. Barreto did not reference in the email either her race or ethnicity, nor could Barreto recall any specific conversation that she ever had with Bozzolo about the nature of the alleged discrimination. Around the same time, Bozzolo told Barreto that the reason why SGT was not keeping Barreto is that she lacked an engineering or science degree. ECF No. 69-6 at 14.

After Barreto learned of SGT's planned termination, her relationship with Bozzolo grew tense. Bozzolo became concerned that the two suffered from communication breakdowns and so Bozzolo arranged for her and Barreto to attend together counseling offered by the employee assistance program. ECF No. 89 at 113. According to Bozzolo, the two women attended four counseling sessions together. Bozzolo testified that she would not have gone to such lengths to help any other employees as she did Barreto. *Id.* at 121–22.

In December 2015 and January 2016, Barreto requested from SGT a "charge number" so that she could bill work she was doing to the MIST contract. Barreto explains that a charge number is essential to properly billing her time under the various contracts. ECF No. 83 at 17. She was not awarded such a number. ECF No. 69-5 at 58.

Approximately two months after Barreto's email complaining of discrimination, Bozzolo informed Barreto that her separation from SGT would be effective March 31, 2016. ECF No. 69-5 ¶ 41, p. 61. Barreto continued asking Bozzolo for work within SGT. ECF No. 69-5 at 51. Although SGT discussed an internal corporate position with Barreto, Barreto was not offered the job. *Compare id.* at 61 (stating that Barreto declined the position because of the compensation); ECF No. 83 at 25 (Barreto denying that she disapproved of the compensation).

Barreto's employment with SGT ended on March 31, 2016. In Barreto's termination

3

memo, Bozzolo writes that Barreto was terminated because the role that she occupied as a supervisor now fell under the responsibility of Aerospace rather than SGT. ECF No. 69-5 at 61. Additionally, Bozzolo noted that Barreto's job skills were confined to financial and administrative matters, and so SGT could not use her in a technical capacity. *Id.*

Although SGT terminated Barreto, it kept two other employees who had been working under the MSES contract. Bita Khoshvaghti, who had a doctorate in applied mathematics, was retained to supervise 17 employees under the MIST contract to execute twenty tasks. ECF No. 69-7 at 3; ECF No. 69-5 ¶ 50; 82-7 at 10. Cheryl Jackson, a Caucasian woman with a bachelor's degree in business management (ECF No. 69-5 at 13; ECF No. 82-21 at 1), worked on the winddown of the MSES contract and a separate contract, OMES. ECF No. 69-8 at 3. Under MSES, Jackson occupied the position of task lead within a group, rather than a group lead. ECF No. 82-16 at 4. During the transition from the MSES contract to the MIST contract, Jackson kept only a third of her previous workload. *Id.* at 5. Beginning in November 2016, Jackson returned to the OMES contract full-time to perform document verification and stayed on in that capacity until March 2017. *Id.* at 6; ECF No. 69-8 at 3.

On June 6, 2016, Barreto contacted the Maryland Commission on Civil Rights to complain of a discriminatory and retaliatory discharge. ECF No. 69-9 at 5–6. Barreto filed the charge of discrimination, again only referencing her termination. *Id.* at 2. Barreto then filed this action, alleging "racial/ethnic" and retaliatory discrimination in contravention of Title VII of the Civil Rights Act of 1964, as amended ("Title VII"), 42 U.S.C. § 2000e *et seq.*; the Maryland Fair Employment Practices Act ("MFEPA"), Md. Code, State Gov't 20-601 *et seq.*; retaliation under the False Claims Act, 31 U.S.C. § 3729 *et seq.*; and retaliation under Maryland common law. ECF No. 2. Barreto now moves to compel discovery, for sanctions for spoliation of evidence,

4

and to seal exhibits; third-party NASA moves to quash a subpoena; and SGT moves for summary judgment.

**II.     Discovery Motions**

**A.  Sanctions**

Barreto sought sanctions for SGT's spoliation of monthly meeting minutes. ECF No. 51. Although all meeting minutes besides two—January 2015 and April 2016—have now been produced, Barreto asks this Court (or the eventual fact finder) to draw a negative inference from the missing meeting notes, and to reopen discovery so that she may to depose the witnesses to the meetings at SGT's expense. ECF No. 65 at 1, 4. The Court retains inherent authority, as well as the discretion as circumscribed by Rule 37 of the Federal Rules of Civil Procedure, to sanction discovery violations. *Victory Stanley, Inc. v. Creative Pipe, Inc.*, 269 F.R.D. 497, 517 (D. Md. 2010). Before imposing sanctions for spoliation of evidence, the movant must demonstrate that:

> (1) [T]he party having control over the evidence had an obligation to preserve it when it was destroyed or altered; (2) the destruction or loss was accompanied by a "culpable state of mind;" and (3) the evidence that was destroyed or altered was "relevant" to the claims or defenses of the party that sought the discovery of the spoliated evidence, to the extent that a reasonable factfinder could conclude that the lost evidence would have supported the claims or defenses of the party that sought it.

*Goodman v. Praxair Servs., Inc.*, 632 F. Supp. 2d 494, 509 (D. Md. 2009) (quoting *Thompson v. U.S. Dep't of Hous. & Urban Dev.*, 219 F.R.D. 93, 101 (D. Md. 2003)).

SGT contends that its difficulty producing the meeting minutes stemmed from a recent upgrade to its electronic file system. ECF No. 59 at 1. SGT ultimately located all meeting minutes for at least thirteen months, besides the two months in question, and further represents that the meeting minutes for January 2015 and April 2016 simply never existed. *Id.* at 2; ECF

No. 65 at 1. Barreto has generated no evidence, or even any good faith basis, to challenge SGT's representations. Nor has she demonstrated that SGT once had these meeting minutes and destroyed them in bad faith.

Barreto vigorously contends that the missing minutes are critical to her case. ECF No. 51-1 at 4–6). Yet Barreto does not use any minutes from any other meeting in defending against SGT's summary judgment motions. *See* ECF Nos. 82–83. Barreto has also deposed five of the six individuals who attended the meetings from which the minutes were generated, and yet she can proffer no specific evidence that has been spoliated to her disadvantage. ECF No. 82-7; ECF No. 82-9; ECF No. 82-15; ECF No. 82-16; ECF No. 82-19. Thus, the Court is unable to conclude that the minutes from the two meetings, if they ever existed, would have supported her causes of action. Barreto's motion for sanctions is denied.

### B. Third-Party Subpoena

Barreto also moves to compel third-party NASA to comply with a subpoena, which NASA in turn moves to quash. ECF Nos. 56–57, 68. Barreto served NASA with a subpoena to produce an employee for deposition. NASA declined to produce the employee, stating that the subpoena did not "provide[] sufficient rationale to justify expending appropriated monies." ECF No. 68-2 at 1.

"When the government is not a party, the [Administrative Procedure Act ("APA")] provides the sole avenue for review of an agency's refusal to permit its employees to comply with subpoenas." *COMSAT Corp. v. Nat'l Sci. Found.*, 190 F.3d 269, 274 (4th Cir. 1999). Administrative actions are presumed valid, and the Court's scope of review is narrow. *Andreas-Myers v. Nat'l Aeronautics & Space Admin.*, No. GJH-16-3410, 2017 WL 1632410, at *4 (D. Md. Apr. 28, 2017). A court may order the agency to comply with the subpoena if the agency

6

acted in an arbitrary, capricious, or otherwise unlawful manner. *Bruno v. Nationwide Mut. Fire Ins. Co.*, No. RDB 08-494, 2009 WL 10681974, at *1 (D. Md. Oct. 26, 2009). Actions are arbitrary and capricious if the agency "relied on facts which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Spence v. NCI Info. Sys., Inc.*, 530 F. Supp. 2d 739, 734–44 (D. Md. 2008) (quoting *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 44 (1983)) (internal quotation marks omitted).

Agencies may promulgate regulations that govern their responses to subpoenas. *Boron Oil Co. v. Downie*, 873 F.2d 67, 69 (4th Cir. 1989) (citing 5 U.S.C. § 301; *United States ex rel. Touhy v. Ragen*, 340 U.S. 462 (1951)). NASA's regulations require the party requesting information from a NASA employee to "furnish the Office of General Counsel [with] a written, detailed statement of the information sought and its relevance to the proceeding in connection with which it is requested." 14 C.F.R. § 1263.103; *Andreas-Myers*, 2017 WL 1632410, at *6. Additionally, when deciding whether to honor the subpoena, the agency may consider "[w]hether disclosure would violate a specific applicable constitutional provision, federal statute or regulation, or executive order." 14 C.F.R. § 1263.105(e).

Barreto's subpoena requested "[t]estimony related to interactions with Ms. Barreto, including but not limited to, her duties in interfacing with NASA, her role during MSES II/A Bridge, Ms. Barreto's work performed under MIST, SGT's interfacing with NASA after March 2016." ECF No. 57-2 at 1. NASA declined to produce its employee for deposition, noting that the subpoena listed the topics on which testimony is requested, "but provides no further

7

explanation as to why his testimony is specifically required." ECF No. 68-2 at 1. NASA concluded that the subpoena did not give a "sufficient rationale to justify expending appropriated monies for this non-federal purpose." *Id.*

NASA's decision bears a rational connection to the subpoena, which provides no information about the underlying proceeding or how it relates to the information requested. Thus, NASA's decision was in accordance with its regulations and was not arbitrary, capricious, or otherwise unlawful. The motion to quash is granted and the motion to compel is denied.

**III. Summary Judgment**

**A. Standard of Review**

Summary judgment is appropriate when the Court, construing all evidence and drawing all reasonable inferences in the light most favorable to the non-moving party, finds no genuine dispute exists as to any material fact, thereby entitling the movant to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see In re Family Dollar FLSA Litig.*, 637 F.3d 508, 512 (4th Cir. 2011). Summary judgment must be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

"In responding to a proper motion for summary judgment," the opposing party "must present evidence of specific facts from which the finder of fact could reasonably find for him or her." *Venugopal v. Shire Labs.*, 334 F. Supp. 2d 835, 840 (D. Md. 2004), *aff'd sub nom. Venugopal v. Shire Labs., Inc.*, 134 F. App'x 627 (4th Cir. 2005) (citing *Anderson v. Liberty Lobby*, 477 U.S. 242, 252 (1986); *Celotex*, 477 U.S. at 322–23)). Genuine disputes of material fact are not created "through mere speculation or the building of one inference upon another." *Othentec Ltd. v. Phelan*, 526 F.3d 135, 140 (4th Cir. 2008) (quoting *Beale v. Hardy*, 769 F.2d

213, 214 (4th Cir. 1985)). Where a party's statement of a fact is "blatantly contradicted by the record, so that no reasonable jury could believe it," the Court credits the record. *Scott v. Harris*, 550 U.S. 372, 380 (2007).

Barreto invokes Rule 56(d) of the Federal Rules of Civil Procedure, asserting that she cannot fully oppose the motion for summary judgment because discovery remains pending. ECF No. 82 at 1. Under Rule 56(d), a party may file an affidavit to attest to what additional discovery is needed for the non-movant to challenge adequately a summary judgment motion. *See Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 961 (4th Cir. 1996). However, because the Court denies Barreto's motions to compel and for sanctions, and discovery has closed, the Court finds no basis to deny or defer ruling on the motion for summary judgment. *See Crumb v. McDonald's Corp.*, No. DKC 15-1719, 2017 WL 6055501, at *3 (D. Md. Dec. 6, 2017) (denying plaintiff's motion to deny or defer summary judgment because plaintiff "had the opportunity to pursue discovery within the limits of the rules and the discovery period set by the court's scheduling order"). The Court turns to SGT's summary judgment motion.

### B. Disparate Treatment

SGT argues that summary judgment as to Barreto's disparate treatment claim based on under-compensation must be granted because Barreto failed to exhaust administrative remedies. The Court agrees.

The Amended Complaint contends that SGT violated Title VII and the Maryland Fair Employment Practices Act ("MFEPA") by paying her a comparatively lower compensation than similarly situated group leads. ECF No. 17-1 ¶ 40. Because MFEPA is the "'state analogue to Title VII,'" the Court analyzes Barreto's MFEPA and Title VII claims together. *See Brennan v. Deluxe Corp.*, 361 F. Supp. 3d 494, 498 n.2 (D. Md. 2019) (quoting *Alexander v. Marriott Int'l*,

9

*Inc.* RWT-09-2402, 2011 WL 1231029, at *6 (D. Md. Mar. 29, 2011)); *Marshall v. Anne Arundel Cty., Maryland*, No. ELH-18-74, 2019 WL 568676, at *10 (D. Md. Feb. 12, 2019). Barreto's claims before this Court are confined to those preserved in the initial formal charge put before the EEO or its state analogue. *See Jones v. Calvert Grp.*, 551 F.3d 297, 300 (4th Cir. 2009), *abrogated on other grounds by Fort Bend Cty., Texas v. Davis*, 139 S. Ct. 1843 (2019) (holding that failure to exhaust is not jurisdictional); *Abadi v. Mecklenburg Cty. Gov't*, No. 3:17-CV-00435-FDW-DCK, 2019 WL 2546732, at *3 (W.D.N.C. June 20, 2019). Only claims "reasonably related" to the administrative charge and flowing "from a reasonable administrative investigation," are preserved for federal adjudication. *Sydnor v. Fairfax Cty., Va.*, 681 F.3d 591, 594 (4th Cir. 2012).

Barreto did not include in her administrative charge or intake questionnaire any allegations of discriminatory compensation. ECF No. 69-9. Nor is the question of Barreto's compensation reasonably related to her preserved allegation that she had been terminated on account of her "race/ethnicity." Accordingly, Barreto's allegations of discriminatory compensation cannot proceed for failure to exhaust administrative remedies. *See Fort Bend*, 139 S. Ct. at 1851; *Klicka v. The Diocese of Charleston*, No. 3:3:05-1320, 2006 WL 2927653, at *5 (D.S.C. Oct. 12, 2006).

SGT next challenges Barreto's disparate treatment claim for having been assigned menial work after the contract transition and not given a MIST contract charge number. Barreto's claim in this respect fails because she has not generated sufficient evidence that SGT's acts constitute an "adverse employment action" cognizable as a discrimination claim. An essential element of a disparate treatment claim is that the plaintiff suffered an adverse employment action on account of her protected status. *Holland v. Wash. Homes, Inc.*, 487 F.3d 208, 214 (4th Cir. 2007). "An

adverse employment action" constitutes any act that "'adversely affect[s] the terms, conditions, or benefits of the plaintiff's employment.'" *James v. Booz-Allen & Hamilton, Inc.*, 368 F.3d 371, 375 (4th Cir. 2004) (quoting *Von Gunten v. Maryland*, 243 F.3d 858, 865 (4th Cir. 2001)). Although reassignment of job function may constitute an adverse employment action, *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742, 761–62 (1998), that is so only when the reassignment visited "significant detrimental effect" on the plaintiff. *Boone v. Goldin*, 178 F.3d 253, 256 (4th Cir. 1999).

Viewing the evidence most favorably to Barreto, the Court finds no support for how "menial work" and failure to be given a charge number on the MIST contract constituted an adverse employment action as to Barreto. Barreto does not generate evidence that she was not credited for the time she worked, or that the "menial" tasks put her at any disadvantage in pay or benefits. Put differently, Barreto's characterization that such employment decisions were unwelcome in her view does not amount to evidence supporting an adverse employment action. Summary judgment is granted in favor of SGT in these claims.

Barreto complains that SGT discriminated against her when terminating her. Title VII and MFEPA make unlawful the discharge of any individual on the basis of race or national origin. 42 U.S.C. § 2000e-2; Md. Code, State Gov't § 20-606.[1] Where a plaintiff marshals no direct evidence of discrimination, the Court evaluates her claims using the burden-shifting framework announced in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Stoyanov v. Mabus*, 126 F. Supp. 3d 531, 541 (D. Md. 2015).

If the plaintiff was ostensibly terminated because of a reduction in workforce, the

---

[1] Although Barreto contends that she suffered "race/ethnicity" discrimination throughout the Amended Complaint, the plain language of the applicable statutes does not expressly cover "ethnicity." For purposes of this analysis only, the Court assumes, without deciding, that Barreto's claim is proper.

11

plaintiff must first make a *prima facie* case of discriminatory termination by demonstrating that (1) she is a member of a protected group; (2) she suffered adverse employment action; (3) she was performing her job duties at a level that met her employer's legitimate expectations at the time of the adverse employment action; and (4) her job duties were absorbed by employees not in the protected class or the employer otherwise did not treat her protected characteristics neutrally when deciding to terminate her. *Guessous v. Fairview Prop. Invs., LLC*, 828 F.3d 208, 219 (4th Cir. 2016). If the *prima facie* case is made, the burden shifts to SGT to offer a legitimate, non-discriminatory reason for the adverse employment action. *See Langerman v. Thompson*, 155 F. Supp. 2d 490, 496 (D. Md. 2001). If SGT provides such a reason, the burden then shifts back to Barreto to raise a genuine dispute as to whether SGT's proffered reason is mere pretext for discrimination. *See E.E.O.C. v. Sears Roebuck & Co.*, 243 F.3d 846, 852 (4th Cir. 2001); *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 960 (4th Cir. 1996).

Although the framework "involves a shifting back and forth of the evidentiary burden, [Barreto], at all times, retains the ultimate burden of persuading the trier of fact that the employer discriminated in violation of" the law. *Venugopal v. Shire Labs.*, 334 F. Supp. 2d 835, 841 (D. Md. 2004); *see also Moore v. Mukasey*, 305 F. App'x 111, 115 (4th Cir. 2008). The "crucial issue" is "an unlawfully discriminatory motive for a defendant's conduct, not the wisdom or folly of its business judgment." *Jiminez v. Mary Washington Coll.*, 57 F.3d 369, 383 (4th Cir. 1995); *see also Propst v. HWS Co., Inc.*, 148 F. Supp. 3d 506, 528 (W.D.N.C. 2015) ("[I]t is not the Court's province to decide whether the reason was wise, fair, or even correct, ultimately, so long as it truly was the reason for" the defendant's action) (quoting *DeJarnette v. Corning Inc.*, 133 F.3d 293, 299 (4th Cir. 1998)) (internal alterations omitted).

The Court assumes, without deciding, that Barreto established a *prima facie* case of

discrimination. The burden of production thus shifts to SGT to offer a legitimate, non-discriminatory reason why Barreto was terminated. SGT "need only articulate 'reasons for its actions which, *if believed by the trier of fact*, would support a finding that unlawful discrimination was not the cause of the employment action.'" *Moore*, 305 F. App'x at 115 (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 509 (1993)) (emphasis in *Hicks*).

SGT produced evidence that it terminated Barreto because it did not make fiscal sense to retain the position of group lead that Barreto occupied after the transition to the MIST contract. Under MIST, Aerospace was responsible for managing all subcontractors previously managed by Barreto. ECF No. 69-5 ¶ 17. SGT remained responsible only for supervising the SGT employees in Barreto's group, of whom only two SGT was able to keep. ECF No. 82-28 at 2; ECF No. 69-5 ¶ 20. Thus, SGT decided to eliminate the supervisory role and migrate supervision of the two SGT employees to a different group lead. ECF No. 69-5 ¶ 23. SGT further generated evidence that Barreto's options as to continued employment with SGT were limited by her lack of science, engineering, or technical background, and SGT offered a lower paying position that Barreto rejected. ECF No. 69-5 at 61; ECF No. 69-6 at 14. Accordingly, SGT has marshalled sufficient evidence demonstrating legitimate, non-discriminatory reasons for Barreto's discharge. *See Hoyle v. Freightliner, LLC*, 650 F.3d 321, 337 (4th Cir. 2011).

Accordingly, Barreto can defeat summary judgment by presenting some evidence that SGT's proffered reasons were pretextual. In this respect, Barreto relies on Bozzolo's "general comments about Puerto Ricans," to include, "'That's just Puerto Ricans,'" and, "'That's the way Puerto Ricans are.'" ECF No. 83 at 31, 34. These statements construed most favorably to Barreto, are not sufficient evidence of pretext. Barreto could not testify when the statements were made and in what context. Divorced of any further detail, the Court cannot reasonably

infer that they reflect Bozzolo's discriminatory animus against Puerto Ricans. Indeed, the comment "[t]hat's just Puerto Ricans" and "[t]hat's the way Puerto Ricans are" certainly reflects an attempt to ascribe to persons of Puerto Rican descent a monolith of traits. But no evidence suggests that such traits are unfavorable, disparaging or negative. Put differently, these statements could just as easily reflect overgeneralizations in a positive, employee-friendly light as not.

Compounding the problem, Barreto offers no evidence as to when in their eleven-year working relationship Bozzolo made such statements or how often. Although the women agree they enjoyed a frank, open working relationship where they talked often about many work and personal topics, Barreto could marshal no additional detail that permits the reasonable inference the statements were related to Bozzolo's decision to terminate Barreto. By contrast, the record evidence reflects that prior to the MSES contract ending, Bozzolo had promoted Barreto and advocated for her to receive a 17% pay raise. *Cf. Proud v. Stone*, 945 F.2d 796, 797 (4th Cir. 1991) ("[I]n cases where the hirer and the firer are the same individual and the termination of employment occurs within a relatively short time span following the hiring, a strong inference exists that discrimination was not a determining factor for the adverse action taken by the employer.").

Nor can Barreto's proposed comparators, even when considered in conjunction with the above statements, demonstrate pretext. Whether two employees are proper comparators turn on whether they "(i) held the same job description; (ii) were subject to the same standards; (iii) were subordinate to the same supervisors; and (iv) had comparable experience, education, and other qualifications—provided the employer considered these latter factors in making the personnel decision.'" *Spencer v. Va. State Univ.*, 919 F.3d 199, 207 (4th Cir. 2019) (quoting *Bio v. Fed.*

14

*Express Corp.*, 424 F.3d 593, 597 (7th Cir. 2005)). To be sure, comparator employees will never be "'precisely the same.'" *Haynes v. Waste Connections, Inc.*, 922 F.3d 219, 223 (4th Cir. 2019) (quoting *Cook v. CSX Transp. Corp.*, 988 F.2d 507, 511 (4th Cir. 1993)). However, even viewing the evidence most favorably to Barreto, neither of the two retained employees are proper comparators.

Unlike Barreto, Bita Khoshvaghti earned her doctorate in applied mathematics, making her more qualified than Barreto to supervise technical work. See ECF No. 69-7 at 4; ECF No. 69-5 ¶ 5. SGT's decision to retain Khoshvaghti is thus consistent with its determination that Barreto's lack of a technical degree limited the work she could perform for SGT. *See, e.g.*, ECF No. 69-6 at 14; ECF No. 69-5 ¶ 27; ECF No. 82-7 at 15. Furthermore, in the transition to the MIST contract, Khoshvaghti's group retained 17 SGT employees, rather than the mere two that were retained in Barreto's group. Thus, Khoshvaghti and Barreto were not similarly situated.

Likewise, Cheryl Jackson is a poor fit. Although Jackson was similar to Barreto in that they both lacked a technical educational background, Jackson's role in SGT at the time of Barreto's termination was distinctly different. Jackson was a task lead, not a group lead like Barreto. Jackson also worked for years on a separate contract, OMES, and would continue that work once MSES ended. By contrast, Barreto had not worked on OMES nearly as extensively as Jackson. *Compare* ECF No. 82-16 at 6 (noting that Jackson worked on OMES "for several years"), *with* ECF No. 85 at 251 (noting that Barreto worked on OMES "at times"). The Court also notes that Jackson's MSES work dwindled, and when the OMES work ended, she too lost her job at SGT. ECF No. 82-21 at 3, 6. Accordingly, drawing all reasonable inferences in the light most favorable to Barreto, no reasonable finder of fact could conclude that SGT fired Barreto for discriminatory reasons. Summary judgment is entered in SGT's favor on this claim.

## C. Retaliation

Barreto claims unlawful retaliation under Title VII, MFEPA, the False Claims Act, and Maryland common law. To succeed on each of these claims, Barreto must demonstrate that a causal link exists between her protected activity and her termination. *See Strothers v. City of Laurel*, 895 F.3d 317, 327 (4th Cir. 2018); *Carlson v. DynCorp Int'l LLC*, 657 F. App'x 168, 170 (4th Cir. 2016); *Adler v. Am. Standard Corp.*, 291 Md. 31, 47 (1981). Barreto is unable to establish the causal link. "'When an employer contemplates an adverse employment action before an employee engages in protected activity, temporal proximity between the protected activity and the subsequent adverse employment action does not suffice to show causation.'" *Phillips v. Raytheon Applied Signal Tech., Inc.*, No. ELH-11-3230, 2013 WL 5440802, at *28 (D. Md. Sept. 27, 2013), *aff'd*, 556 F. App'x 265 (4th Cir. 2014) (quoting *Drago v. Jenne*, 453 F.3d 1301, 1308 (11th Cir. 2006)). It is undisputed that, as of September 23, 2015, Barreto knew she would be terminated. ECF No. 69-6 at 12–13. Barreto did not engage in any protected activities until November 30, 2015, when she emailed Bozzolo to complain about her termination. ECF No. 69-5 at 43.[2] Drawing all reasonable inferences in the light most favorable to Barreto, no reasonable juror could conclude that Barreto was terminated on account of her protected activity. Summary judgment is granted in SGT's favor.

## IV. Motion to Seal

Barreto filed a motion to seal three exhibits because they "contain highly confidential information regarding Defendant's current and/or former employees." ECF No. 81 at 1. Barreto further states that the information is "extremely confidential" such that "there is no alternative to sealing that would provide sufficient protection." *Id.* at 1–2. Before granting a motion to seal,

---

[2] Barreto's purported protected activity under the False Claims Act—requesting a charge number to ensure proper billing to the federal government— occurred even later, in December 2015. ECF No. 69-5 at 58.

the parties must rebut the general presumption that the public enjoys free and unfettered access to court records. *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 (1978). The presumption of access may be rebutted when the proponent demonstrates sealing is necessary to protect individual privacy concerns or corporate confidential, proprietary information. *Interstate Fire & Cas. Co. v. Dimensions Assur. Ltd.*, No. GJH-13-3908, 2014 WL 6388334, at *1 (D. Md. Nov. 13, 2014).

Although some exhibits may very well include confidential information, the Court notes that parts of ECF No. 83 are already included in the public record. *Compare* ECF No. 69-6 at 3, *with* ECF No. 83 at 11. Furthermore, Barreto has provided no details supporting the grounds for maintaining confidentiality. Accordingly, the Court defers ruling on Barreto's motion to seal for thirty days. Within thirty days of the date of this Memorandum Opinion, either party may submit supplemental briefing in support of continued sealing. If the Court does not receive supplemental briefing, it will construe silence as assent to unsealing the documents. ECF No. 83, ECF No. 83-1, and ECF No. 83-2.

**V. Conclusion**

For the foregoing reasons, the Court denies Barreto's motion for sanctions, denies Barreto's motion to compel, grants NASA's motion to quash, defers ruling on Barreto's motion to seal, and grants SGT's motion for summary judgment. A separate Order follows.

July 19, 2019 /S/
Date Paula Xinis
United States District Judge